*New-Haven,*
June, 1817.

Fitch
*v.*
Ayer.

</div>

·——•◦•——·

## HINMAN *against* BACON.

THIS was an action of *indebitatus assumpsit* for money had and received.

The case was as follows. On the 25th of *December* 1799, the plaintiff being indebted to the administrators of *Nicholas S. Masters,* Esq. deceased, in the sum of 641 dollars, 64 cents, gave them his promissory note for that sum, payable on the

<div align="right">

*A.* being indebted to *B.*, gave him a promissory note, and secured the same by mortgages of several pieces of land. *B.* ob-

</div>

tained a decree of foreclosure as to one of those pieces, and, after the time of redemption was expired, assigned the note, with the mortgages, to *C.*, under an agreement, that on *A.*'s paying, within six months, the money advanced by *C.* for the note, with interest, *C.* would deliver up the note to *A.*, and pay him what the piece of land so foreclosed should be appraised at, by disinterested men, to be agreed upon by *A.* and *C.*, or, in the event of their disagreement, each to choose one, and the men so chosen to choose a third. On the last day of the time limited, *A.* tendered *C.* the money, which was accepted by *C.* about sun-set. Immediately afterwards, *A.*, without making any attempt to agree with *C.* upon appraisers, nominated one on his part. *C.* wishing to consult his counsel, waited until the next day, and then nominated one ; but *A.* declared that *that* man should not go upon the land ; and nothing further was done, or offered to be done, relative to an appraisement. Shortly afterwards, *A.*'s son applied to *C.* for the note, who delivered it up to him ; which he held with his father's knowledge and approbation. In an action of *indebitatus assumpsit*, brought by *A.* against *C.*, to recover back the money so paid by *A.*, it was held, that he was not entitled to recover, 1. because the plaintiff had failed to perform his part of the agreement, and the non-performance, on the part of the defendant, was owing to the plaintiff's conduct ; 2. because the money was paid in satisfaction of the plaintiff's note, which was taken up, so that the parties would not be left in *statu quo ;* and 3. because the payment of the money discharged the plaintiff's mortgage debt, and disencumbered his land.

25th of *December* 1802, with interest annually ; and to secure the payment thereof, he mortgaged to them sundry pieces of land, and, among others, that on which the *Episcopal* church in *Roxbury* has since been erected. This note and the mortgage were afterwards assigned to *Charles S. Masters.* In *February* 1813, a decree in chancery was obtained against the plaintiff, to foreclose his equitable right to redeem the last mentioned piece of land, unless he should pay the amount due on the note, including principal and interest, with the costs of suit, by the first *Monday* of *September* following. This the plaintiff failed to do ; and thereby lost his equity of redemption. On the 27th of *November* 1813, *Charles S. Masters* transferred the note to the defendant under the following written agreement : " I, the subscriber, for a valuable consideration by me received of *Asahel Bacon,* do assign and transfer unto him the said *Bacon,* a certain note of hand, given by *Ephraim Hinman* to the administrators of *Nicholas S. Masters,* Esq. deceased, for the sum of 641 dollars, 64 cents, dated the 25th of *December* 1799, payable on the 25th of *December* 1802, with interest annually, on which note there have been sundry payments, and the payment of which was secured by sundry mortgages, made at different times, on several pieces of land lying in *Roxbury,* to said administrators, the equity of redemption in one of which pieces of land, being that on which stands the *Episcopal* church in said town, has been foreclosed on the petition of said administrators, and the time of redemption expired, and the interest in said note having, by assignment, become wholly mine ; I do agree, that I will procure from said administrators a release of all their claim to said piece of land, the equity of redemption in which has been foreclosed as aforesaid, and will release the same to said *Bacon,* within six months from this date ; provided always, that the said *Bacon* shall receive, and he does hereby receive, the same, at his risk. And I do further agree, that I will procure a release of said mortgages which now remain unreleased, in the names of the said administrators, and will release the same to the said *Bacon,* within six months after the equity of redemption shall have expired, which shall be limited by any decree of court hereafter to be made upon any such mortgages aforesaid, upon which no decree of foreclosure has been made. *November* 27th, 1813.          *Charles S. Masters.*"

At the same time, the defendant executed and delivered to *Masters*, the following writing : " Whereas *Charles S. Masters* has t'.is day assigned to me a certain note of hand, given by *Ephraim Hinman* to the administrators of *Nicholas S. Masters*, Esq. deceased, for the sum of 641 dollars, 64 cents, dated the 25th of *December* 1799, payable on the 25th of *December* 1812, with interest annually, which said note has been in part paid, and which had, by assignment from said administrators, become the sole property of said *Charles S. Masters*, and the payment of which note was secured by sundry mortgages on various pieces of land, situated in *Roxbury*, at different times by the said *Hinman* made, one of which mortgages, as far as it respects a piece of land on which the *Episcopal* church is situated in said *Roxbury*, has been foreclosed, and the time allowed for redemption expired ; and whereas I have given said *Charles* for said note, so secured as aforesaid, the sum of 862 dollars, 61 cents : Now, therefore, I do, by these presents, stipulate and agree, that 1 will not put said note in suit against said *Hinman*, nor cause any process by petition of foreclosure upon any of the mortgages aforesaid, or otherwise, to be instituted against the said *Hinman*, to enforce the collection of the money due on said note, or by me paid therefor, within six months from this date ; and on payment by the said *Hinman* of said sum of 862 dollars, 61 cents, within said period of six months, with the interest thereon from this time, I will deliver up said note to said *Hinman*, and will pay to him what said piece of land so foreclosed as aforesaid shall be appraised at, independent of the church thereon standing, and the fixtures and other things thereto pertaining, by judicious, disinterested men, to be agreed upon by me and the said *Hinman*, or in the event of our disagreeing, each one to choose one of said appraisers, and the men so chosen to choose the third ; he the said *Hinman*, on receiving the amount of such appraisement, executing to me acquittances of said land so appraised as aforesaid. And I do hereby agree, that this instrument shall be holden by said *Masters* for the said *Hinman's* benefit ; provided he performs the conditions herein specified. *November* 27th, 1813.

<div align="right">*Asahel Bacon.*"</div>

The plaintiff was not present when these agreements were made, and was ignorant of them.

The defendant did not, within six months afterwards, take any measures to enforce a collection of the note, or to foreclose the mortgage.

On the 26th of *May* 1814, the plaintiff, in pursuance of the agreement last recited, tendered to the defendant the sum of 880 dollars, 50 cents, being the amount paid by the defendant to *Masters,* with interest; which was accepted by the defendant, after much conversation, about sun-set.  The plaintiff, immediately, and without first making any attempt to agree with the defendant upon the men to appraise said land, offered, as an appraiser by him chosen, *Aaron Hitchcock* of *New-Milford,* who was then present, and whose place of residence was about seven miles from the land.  At the same time, the plaintiff tendered to the defendant a quit-claim deed in fee of said land, duly executed and acknowledged; which the defendant refused to accept.  The defendant also declined, at that time, to appoint an appraiser, or to take any measure for appraising said land, observing that *Hitchcock* lived out of *Roxbury,*—that he had no other objection to him,—and that he would go to *Woodbury,* an adjoining town, and advise with his counsel whether the plaintiff had right to offer an appraiser who lived out of *Roxbury,* before he would do any thing further in the business.  On the next day, the defendant, on his return from *Woodbury,* met the plaintiff in the highway, and observed to him, that he had appointed *Philo De Forest* of *Woodbury,* as an appraiser; to which the plaintiff replied, that *that* man should not go on the land.  Nothing more was done, or offered, by either party.

Shortly afterwards, *R. R. Hinman,* Esq. the plaintiff's son, knowing that the money had been paid by his father, and received by the defendant, and being informed by his father, that the note had not been given up, applied, without any particular instructions from his father, to the defendant for the note, who, on request, delivered it up to him.  He carried it home, and shewed it to his father, informing him what he had done.  His father did not disapprove of his conduct in getting the note; which is still in his possession.

Under these circumstances, the plaintiff sought to recover back the money which he had paid.

The case was referred to the nine Judges for their advice.


*Sherman* for the plaintiff.

*Benedict* for the defendant.

*New-Haven,*
June, 1817.

Hinman
*v.*
Bacon

**SWIFT, Ch. J.** I am of opinion, that the plaintiff is not entitled to recover. It appears from the facts stated, that he has not performed his part of the contract, and that the non-performance by the defendant is owing to his conduct. Without attempting to agree on appraisers, he instantly, on tendering the money, nominated one on his part ; the defendant, in reasonable time, appointed his appraiser ; to whom the plaintiff disagreed, and did nothing more to procure the appraisal of the land. The performance of the contract was defeated by the plaintiff, and he cannot be entitled to recover.

It appears, that the money for which this action is brought, was paid in satisfaction of a note given by the plaintiff ; to secure which land had been mortgaged. This note has been given up by the defendant ; and from the evidence, there can be no doubt it was received by the son with the consent and approbation of the father. The money, then, has been paid in satisfaction of a note, which has been given up. The plaintiff can have no right to recover it back. If he should, it would set up the note, and he would be liable to re-pay it.

It further appears, that the plaintiff has paid a debt for which land was mortgaged. By the payment of this debt, he is now entitled in equity to the land mortgaged to secure it. He has, then, only done what by law he was obliged to do, and can now claim all he has a right to in equity. There is, of course, no reason for the maintenance of this action. The plaintiff ought to become nonsuit.

**EDMOND, J.** By the terms of the contract, the plaintiff acquired a right to pay the sum stipulated, and deliver the deed, within the time limited, or not, as he might judge most expedient. There was no obligation, on his part, to comply with the terms. On the last day of the time, and near the close of it, on which he had a right to make his election, he tendered the money and deed, and named his appraiser. If, by the terms of the contract, the acts to be done by the parties respectively, were to be concurrent, the plaintiff ought to have made his election in season to have had the appraisal, and the business completed, on the last day, within which he had a right to avail himself of the privilege secured

to him by the contract. But if, by the terms, the money was *first* to be advanced, the defendant ought to have had a reasonable time, *after the payment,* to comply on his part. From the evidence, as stated, it appears, that there was not time, after the tender and receipt of the money, to name and obtain an appraiser on the part of the defendant, and finish the business on that day. On the next, the defendant gave notice of his choice, and readiness to proceed on the business, but if not prevented, was at least excused, by a peremptory refusal, on the part of the plaintiff, to suffer the appraiser chosen by the defendant to go on the land. The defendant's readiness to comply further appears from his delivering the note, on request, to the plaintiff's son.

On the ground, therefore, that from the evidence it appears, that the failure of an entire execution of the contract, was owing, not to the refusal of the defendant, after receipt of the money, to have the contract, on his part, carried into full effect, as soon as it could reasonably be done, but to the neglect or refusal, on the part of the plaintiff, to proceed further; he ought not to be permitted to avail himself of a non-execution caused by his own act, rescind the contract, and subject the defendant to a suit for the repayment of money, voluntarily paid, and received in pursuance of the terms stipulated in the contract. And for this reason, I should advise, that judgment be rendered for the defendant.

Another objection to the plaintiff's right of recovery has been urged, which, however, I do not consider as conclusive. It is said, that the contract being in part executed, should it be rescinded, and the money recovered back, it would not place the parties in *statu quo;* because the money due by the note had been secured by a mortgage of the land referred to in the contract, and other lands, and by a decree of foreclosure, the plaintiff had lost his equity to redeem the land in question, whereby the title vested in *Masters,* and by him had been transferred, together with the note, to the defendant; consequently, the receipt of the money due by the note had opened the decree of foreclosure, and if the money should be recovered back in this action, the plaintiff would gain an advantage by having the decree opened, and the defendant exposed to have his title derived from *Masters,* defeated, which, if the contract in favour of the plaintiff had not been

*New-Haven,*
June, 1817.

Hinman
*v.*
Bacon.

made, would have been secure, and equally so, if the money had not been paid and received, and will be so still, if the contract is finally carried into complete effect.

In considering this objection, it is not necessary to decide, whether, in this state, an action on a note secured by mortgage can be maintained, after a decree of foreclosure, and the time allowed for redemption in the decree is elapsed.(a) For whether recovered in an action at law, or voluntarily paid and received after a decree of foreclosure has taken effect, the receipt of the money does not vacate the decree. *That* remains in force, as to its legal effect; it only opens the door for an application to a court of chancery, founded on a new equity, arising from the payment and receipt of the money, after the foreclosure, to have the decree opened, or set aside, and the mortgagor permitted to redeem. If this be so, all that the plaintiff could gain by payment of the money, would be a right to apply in chancery. If he rescinds the contract, and recovers the money back, he rescinds it *in toto,* as well in respect to its equitable, as its legal, effects; and destroys the only equitable ground of application to chancery; and, as to any relief against the foreclosure, will stand on the same footing he would have done, had the contract never been made, and no step taken towards its fulfilment. On the other hand, if the contract is rescinded, and the money returned, the defendant will have the same security as to title, that he had previous to the contract for the plaintiff's benefit; or that he would have had, provided the plaintiff had not tendered the money by the day.

The objection, therefore, that the contract, after what has taken place, cannot be rescinded, so as to leave the parties in *statu quo* as to their respective rights, does not appear to me to be well founded, or furnish a sufficient reason, of itself, against the plaintiff's recovery in this action.

The circumstance of the note being put into the hands of the plaintiff's son, and by him received and held, without any authority, in fact, from the plaintiff, was not, though it might have been so intended by the defendant, a delivery to, and receipt of it by, the plaintiff, in pursuance of the contract. Should the defendant, therefore, be put to any inconvenience on that account, it is not to be attributed to the

(a) 1 *Root,* 202.

*New-Haven,*
*June, 1717.*

Hinman
*v.*
Bacon.

plaintiff. It was the duty of the defendant to have delivered it, after a receipt of the money, and tender of the deed, in a reasonable time, to the plaintiff.

GODDARD, J. The plaintiff claims, that he has right to recover in this action, on the ground that he has done all in his power to fulfil the contract, and that it failed through the mere default of the defendant. But the facts stated for our opinion, do not justify this claim.

By the terms of the contract, the plaintiff was to pay the money within six months from its date. On the last day of the time limited, he paid the money at sunset, and tendered his deed, and offered, and named an appraiser of the land. The objection, which the defendant then made to the man offered as an appraiser, might not have been well founded; but he had right to take reasonable time, either to agree on appraisers, (which, by the way, the plaintiff never offered to do,) or to consult his counsel as to proper men for appraisers, or to do whatever else he pleased. The plaintiff himself having waited until the last moment of the time limited for paying the money before he did any thing on the subject, it surely was not unreasonable for the defendant to claim, that the selection of appraisers should be delayed until the next day, especially as it was so late, that the business could not, in its nature, be done that night. Next day, the defendant did offer an appraiser, to whom the plaintiff objected, and declared, that he should not go upon the land. By the terms of the contract, if the parties could not agree on appraisers, (and the plaintiff never offered to do so) each party had right, to choose one appraiser, without consulting the wishes of the other party, and *they* were to agree on a third. The defendant then, next day, within reasonable time, waived his objection to the plaintiff's appraiser, and named one himself. The plaintiff refused to proceed. He, therefore, cannot recover on this ground.

But the money which the plaintiff paid, was paid to cancel his own note, to release and disencumber his own land, other lands than those foreclosed, and which could not be done without payment of this very money. What effect that payment may have upon the land foreclosed, it is not necessary at all to decide. If the plaintiff has lost that land, he has done it by his own fault and neglect.

From the evidence, also, it appears, that the plaintiff, by his son, has taken up, and now holds his note. If this action should be sustained, the parties would not be left in *statu quo.* The plaintiff has paid and taken up his own note, and can have no remedy to recover back the money.

*New-Haven,*
June, 1817.

Hinman
*v.*
Bacon.

TRUMBULL, SMITH, BRAINARD, BALDWIN and HOSMER, Js. concurred in the opinion given by Ch. J. *Swift.*

GOULD, J. gave no opinion, having been of counsel in the cause.

Judgment to be given for defendant.